# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*[1]

**UNITED STATES, Appellee**

v.

**Private E1 KELVIN T. WINFIELD**
**United States Army, Appellant**

ARMY 20210092

Headquarters, Fort Bragg
Fansu Ku, Military Judge
Colonel Warren L. Wells, Staff Judge Advocate

For Appellant: Major Rachel P. Gordienko, JA (argued); Lieutenant Colonel Dale C. McFeatters, JA; Jonathan F. Potter, Esquire; Major Rachel P. Gordienko, JA (on brief).

For Appellee: Captain Timothy R. Emmons, JA (argued); Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jacqueline J. DeGaine, JA; Major Kalin P. Schlueter, JA; Captain R. Tristan C. De Vega, JA (on brief).

27 April 2023

---
OPINION OF THE COURT
---

PARKER, Judge:

The Office of the Staff Judge Advocate (OSJA) failed to honor appellant's rights under Article 66(d)(2), in that appellant has demonstrated excessive post-trial delay in the processing of his case. However, we find there is no available appropriate relief under Article 66(d)(2) based on the facts of this case as discussed below.

## BACKGROUND

This general court-martial is not complicated; it stems from a relatively short period of intoxicant-fueled violence. Appellant tried to plead guilty, but his intoxication at the time of his misconduct made it very difficult for him to reliably describe what he did. He also told the military judge he did not think he had the

---

[1] Judge ARGUELLES decided this case while on active duty.

requisite state of mind to appreciate the wrongfulness of his conduct. Predictably, the guilty plea hearing unraveled, and a contested bench trial followed several months later.

On 3 March 2021, a military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of assault consummated by a battery and two specifications of damage to non-military property, in violation of Articles 109 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 909, 928 [UCMJ]. The military judge sentenced appellant to a bad-conduct discharge on the same day.

Two days after trial, appellant declined to submit matters under Rule for Courts-Martial [R.C.M.] 1106. The convening authority took no action on the findings or sentence, and on 23 March 2021, the military judge entered judgment. Nearly ten months later, on 18 January 2022, the military judge received the record of trial. The military judge authenticated the record of trial on 24 January 2022, only six days later. Yet, the court reporter did not certify the record, which only required correction of 23 errors noted in the trial judge's errata, until 24 June 2022, five months later. The OSJA mailed the record to this court on 27 June 2022, and we docketed the case on 11 July 2022. Nearly 500 days had elapsed since announcement of sentence.

Trying to explain the exceptionally slow post-trial processing, the OSJA submitted a memorandum attributing the delay to COVID-19 and a court reporter shortage. The Chief of Military Justice also offered, "[r]ecords are processed as expeditiously as possible *taking the accused's sentence into consideration.*"[2] (emphasis added).

---

[2] We are mindful of The Memorandum for Judge Advocate Legal Service Personnel, signed by the Judge Advocate General of the Army on 1 March 2022, titled "Policy Memorandum 22-08 – Court Reporter Regionalization," attached as an appellate exhibit, which blends a first-in, first-out procedure: "For cases not reassigned to a different installation or OSJA by the regional manager, the staff judge advocate or designee of the originating GCMCA determines priority." The record in this case does not indicate whether the regional court reporter assigned its transcription to another OSJA or installation, which would trigger the first-in, first-out policy, or whether it remained within the Fort Bragg OSJA for transcription. We are also left to wonder how an appellant's sentence affects its transcription priority in that OSJA, whether a discharge-without-confinement sentence receives lower priority, and whether the priority calculus for the post-trial transcription process is reduced to writing.

## LAW AND DISCUSSION

We review allegations of unreasonable post-trial delay de novo. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006); *United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011); *United States v. Anderson*, 82 M.J. 82, 85 (C.A.A.F. 2022).

We are a court of limited jurisdiction; one such limit comes from Article 59(a), UCMJ: "A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." *See also United States v. Cueto*, 82 M.J. 323, 334 (C.A.A.F. 2022); *United States v. Hamilton*, 78 M.J. 335, 342–43 (C.A.A.F. 2019).

Despite the limiting function of Article 59(a), multiple sources of authority grant an appellant the right to post-trial processing without unreasonable delay. One of them is the Due Process Clause of the Fifth Amendment to the Constitution that states, "No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." A second authority is Article 66(d)(2), UCMJ, which authorizes service courts of criminal appeals to "provide appropriate relief if the accused demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ."

Our superior court—and this court—have also contributed numerous decisions to post-trial delay common law jurisprudence. *United States v. Moreno* is one of the most influential military cases of our time, presuming reasonableness for post-trial processing where: convening authorities take initial post-trial action within 120 days of trial; appellate docketing occurs 30 days after that; and appellate review concludes within eighteen months of docketing.[3] 63 M.J. 129, 142 (C.A.A.F. 2006). Our superior court grounded this reasoning in the Due Process Clause,[4] quoting multiple Supreme Court and other federal court decisions: "[T]he procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution." *Evitts*, 469 U.S. at 393. "[A]n appeal that is inordinately delayed is as much a 'meaningless ritual,' as an appeal that is adjudicated without the benefit of effective counsel or a transcript of the trial court proceedings." *Harris v. Champion (Harris II)*, 15 F.3d. 1538, 1558 (10th Cir. 1994) (quoting *Douglas v. California*, 372 U.S. 353, 358 (1963)) (cleaned up).

---

[3] Colloquially known as Phases I, II, and III.

[4] *Diaz v. Judge Advocate General of the Navy* appears to mark the first time our superior court relied on the Due Process Clause in this field: "[a]dditionally, Petitioner has a constitutional right to a timely review guaranteed him under the Due Process Clause." 59 M.J. 34, 38 (C.A.A.F. 2003) (citing *Harris v. Champion (Harris II)*, 15 F.3d. 1538, 1558 (10th Cir. 1994)).

Our superior court adopted (and adapted) the four factors from *Barker v. Wingo*, a Sixth Amendment speedy trial case, in order to provide a framework for analyzing post-trial delay and due process: (1) length of delay; (2) reasons for the delay; (3) appellant's assertion of the right to timely review and appeal; and, (4) prejudice. 407 U.S. 514 (1972); *Moreno*, 63 M.J. at 135. In *United States v. Toohey*, our superior court further held: "[N]o single factor [is] required to find that post-trial delay constitutes a due process violation." 63 M.J. 353, 361 (*Toohey II*) (C.A.A.F. 2006) (quoting *Moreno*, 63 M.J. at 136) (citing *Barker*, 407 U.S. at 533).

Additionally, with the issuance of *United States v. Brown,* this court established a 150-day limit on the time lapse between final adjournment of the court-martial and appellate docketing, beyond which we would presume unreasonable delay. 81 M.J. 507 (Army Ct. Crim. App. 2021). Consistent with its now-common request in post-trial delay cases, appellee again urges us to overrule *Brown*, asserting that Congress rendered its framework unnecessary with the passage of the new legislation found in Article 66(d)(2), UCMJ. Military Justice Act of 2016, Pub. L. No. 114-328, §§ 5001–6642 (23 Dec. 2016).

Appellee also writes of the new Article 66 legislation's impact on *Moreno*, arguing, "the justification for the judicially created presumptions in *Moreno* no longer exists." In *Brown*, we also questioned whether *Moreno*'s timing gates (e.g., convening authority action) remained enforceable with the legislative and regulatory revisions to post-trial processing. *Brown*, 81 M.J. at 510 ("Given these changes, how then is a CCA supposed to apply *Moreno*'s phase I and phase II presumptions, both of which refer to the procedural relic of convening authority action?"). We leave the analysis and determination of the continued application of *Moreno* to our superior court, as only our superior court may alter its precedent and that decision is simply not ours to make.[5]

---

[5] We also recognize Judge Maggs's concurrence in *United States v. Anderson* questioning whether *Moreno* remains viable in the context of the amendment to Article 66, UCMJ, and after *Betterman v. Montana*, 578 U.S. 437 (2016). 82 M.J. 82, 88–90 (C.A.A.F. 2022). We understand *Betterman*'s holding to mean that the Sixth Amendment Speedy Trial Clause does not entitle a criminal defendant to speedy post-trial processing. On the other hand, *Betterman* leaves undisturbed the due process right to sentencing—and appellate review—without inordinate delay:

> Does the *Sixth Amendment*'s speedy trial guarantee apply
> to the sentencing phase of a criminal prosecution? That is
> the sole question this case presents . . .. For inordinate
> delay in sentencing, although the Speedy Trial Clause

(continued . . .)

4

At our level, the well-intended 150-day limit established by *Brown* has done nothing in appellant's case—and little, if anything, in far too many other cases—to accelerate the post-trial process. Therefore, *Brown*'s 150-day timeline is overruled. Put simply, some cases justifiably take longer than 150 days to process for appellate review. Others should take significantly less time. Appellee should take no comfort from this development, for we will no longer presume reasonableness when a case takes less than 150 days between sentencing and appellate docketing. Instead, we will scrutinize even more closely the unit-level explanations for post-trial processing delays between final adjournment and appellate docketing, including those less than 150 days. Staff judge advocates who decline to memorialize delays with thorough, credible, and relevant specificity do so at the peril of their units' cases on appeal. We do not presume to be prescriptive in this regard. Nonetheless, we are consistently interested to know about a case's transcript length, competing requirements (e.g., *actual* operational exigencies, in-court coverage), military judge availability, court reporter availability and utilization for transcription, and resource shortfalls (e.g., insufficient throughput capacity despite court reporter regionalization).[6]

Turning to appellant's due process claim, we find no violation due to the lack of *Barker* prejudice resulting from the delay. Nor did we find, "in balancing the other three factors, that the [post-trial] delay was so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Anderson*, 82 M.J. at 88. We therefore turn to the new Article 66 legislation in deciding the merits of appellant's argument and whether the requested relief is appropriate.

Article 66(d)(2), UCMJ, provides this court the necessary authority and framework to decide this case. Article 66(d)(2) ("the Court *may provide appropriate relief* if the accused demonstrates . . . excessive delay in the processing of the court-martial after the judgment was entered into the record") (emphasis added). Given that Article 66(d)(2), UCMJ, does not define "excessive delay", in considering whether a delay is excessive this court will broadly focus on the totality of the circumstances surrounding the post-trial processing timeline for each case, balancing

---

(. . . continued)
does not govern, a defendant may have other recourse, including, in appropriate circumstances, tailored relief under the Due Process Clauses of the Fifth and Fourteenth Amendments. *Betterman*, 578 U.S. at 439.

[6] In accounting for delays, we harken to our superior court's jurisprudence on the matter that "personnel and administrative issues, such as those raised by the Government in this case, are not legitimate reasons justifying otherwise unreasonable post trial delay." *Arriaga*, 70 M.J. at 56.

the interplay between factors such as chronology, complexity, and unavailability, as well as the unit's memorialized justifications for any delay. As for this case, we find that ten months to type a 603-page record, and five months to make 23 corrections is excessive. Moreover, the unit's provided explanation as to the reasons for the delay is simply not persuasive and does not justify the large periods of time appellant's record went untouched.

While we find that there is excessive delay in this case, Article 66(d)(2) dictates we "may provide appropriate relief" and leaves the determination as to whether relief is provided, and what type of relief is appropriate, to our discretion. We determine that there is no appropriate relief available as appellant was sentenced to a punitive discharge, which we find to be an appropriate sentence and decline to set it aside. Appellant was convicted of forcing his way, uninvited, into a female soldier's barracks room, destroying her property and physically assaulting her. When law enforcement responded to the scene, appellant fled the area. Upon reaching a roadway, appellant flagged down a car and forced his way into the vehicle, physically assaulted the driver, and demanded the driver take him off-post. Despite excessive post-trial delay in the processing of appellant's court-martial, a bad-conduct discharge is a significant punishment and is an appropriate characterization of appellant's service given his misconduct. Therefore, we find there is no relief that is appropriate under the circumstances of this case.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.[7]

Senior Judge WALKER, Senior Judge BROOKHART, Senior Judge FLEMING, Judge HAYES, and Judge MORRIS, concur.

SMAWLEY, Chief Judge, concurring:

For the reasons set forth above, I agree with my colleagues in the majority. I write separately to highlight and expand upon the general factors mentioned in the majority opinion that this court may take into consideration when determining whether an appellant has demonstrated *"excessive delay* in the processing of the court-martial after the judgment was entered into the record. . .." Article 66(d)(2), UCMJ (emphasis added). I also write separately to emphasize the importance of the chronological detail provided by installations during post-trial processing because it will allow this court to "weigh and balance [the reasons for delay] in determining

---

[7] The Statement of Trial Results, as incorporated into the Judgment of the Court, is amended to reflect the response to block 29 as "Yes."

whether they provide adequate explanation for any apparent post-trial delays." *United States v. Canchola*, 64 M.J. 245, 247 (C.A.A.F. 2007).

Given Article 66(d)(2), UCMJ, does not define "excessive delay," we will look to well-established jurisprudence from our superior court, which has "addressed appellate delay issues since 1974." *Arriaga*, 70 M.J. at 56. Since that time, the CAAF has analyzed the "reason for delay" in numerous cases where an appellant has alleged unreasonable, or "excessive," post-trial delay. *See United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F. 2005) (appellant alleged unreasonable post-trial delay where a span of 363 days passed between the date of trial and docketing at the Navy-Marine Corps Court of Criminal Appeals); *Bush*, 68 M.J. at 97 (the CAAF analyzed appellant's assertion that his "due process right to speedy post-trial review was violated by a delay of more than seven years from the court-martial to docketing at the Court of Criminal Appeals."); *Arriaga*, 70 M.J. at 57 (the CAAF analyzed the reasonableness of 243-day post-trial delay).

When analyzing post-trial processing as part of the *Barker* balancing test, the CAAF "look[s] at how much of the delay was under the Government's control . . . assess[ing] any legitimate reasons for the delay, including those attributable to appellant." *Anderson*, 82 M.J. at 86 (citing *Moreno*, 63 M.J. at 136). We will continue to conduct the same assessment as part of our analysis to determine whether the post-trial processing in a case amounted to "excessive delay." We will do so on a "case-by-case basis," *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F. 2004), taking into account the "totality of the circumstances" surrounding the post-trial processing timeline for each case. *United States v. Luke*, 69 M.J. 309, 321 (C.A.A.F. 2011).

Bearing in mind that "[m]any factors can affect the reasonableness of appellate delay," *Toohey,* 60 M.J. at 102, some of the circumstances we will take into account are the "detailed or specific reason[s] for the delay in creating the transcript or authenticating the record of trial," or lack thereof. *Anderson*, 82 M.J. at 86. This will include an analysis of the "ministerial task[s]," such as the timetable for transmission of the record between various entities at installations prior to docketing at this court. *United States v. Simon*, 64 M.J. 205, 208 (C.A.A.F. 2006); *see United States v. Oestmann*, 61 M.J. 103, 104 (C.A.A.F. 2005). In our analysis of the post-trial processing timeframe, we will continue to closely scrutinize lengthy post-trial processing attributable to "personnel and administrative issues," mindful that our superior court has found such reasons are "not legitimate." *Id.* Similarly, "a general reliance on budgetary and manpower constraints will not constitute reasonable grounds for delay." *Canchola*, 64 M.J. at 247.

Conversely, our analysis as to whether post-trial processing rises to the level of "excessive delay" will continue to take into account any "legitimate reasons or exceptional circumstances" provided by the government. *United States v. Dearing*,

63 M.J. 478, 486 (C.A.A.F. 2006). We will consider whether a case is "unusually long [or] complex." *Id.*; *Toohey* at 102. Other legitimate reasons we will balance may derive from "the high demands placed upon military personnel . . . particularly in combat or hostile environments." *Canchola*, 64 M.J. at 247. In any event, the government should stand ready in every case to "provide any particularized reason for [a] delay." *Anderson*, 82 M.J. at 87.

It is "[a]n SJA's responsibility to secure justice and fairness in every case . . . ensuring that every soldier receives 'a fair, impartial, and timely trial, to include the post-trial processing of his case.'" *United States v. Chisholm*, 58 M.J. 733, 738 (C.A.A.F. 2003) (quoting *United States v. Collazo*, 53 M.J. 721, 725 (Army Ct. Crim. App. 27 July 2000)). Accordingly, "staff judge advocates and convening authorities should ensure [the] reasons [for delay] *are documented in the record of trial.*" *Canchola*, 64 M.J. at 247 (emphasis added). Put simply, the chronology for each case should account for any lengthy processing period with a detailed, original account of all relevant circumstances. As detailed above, these relevant circumstances may include, but are not limited to factors such as: length of the record; complexity of the case; unavailability of the military judge; or, any operational considerations, such as combat deployments. Staff judge advocates should avoid broad generalities that fail to inform the court of the specifics necessary to determine whether post-trial processing amounted to "excessive delay." *See Id.* Chronological detail is paramount to our assessment, and a "general explanation" for a prolonged post-trial processing timeline should not be expected to "withstand scrutiny." *Id.*

PENLAND, Judge, joined by Judge ARGUELLES, concurring in part and dissenting in part:

I agree with a significant part of the majority opinion, especially its decision to overrule *Brown*, in part, and its conclusion that the post-trial delay in this case was excessive under Article 66(d)(2). However, in my judgment, two additional bases for relief exist: the Fifth Amendment's Due Process Clause; and, Article 66(d)(1). I also would set aside the adjudged sentence, as appropriate relief for the OSJA's triumvirate of failures.

The government deprived appellant of his constitutional and statutory rights to speedy post-trial processing. I am mindful that appellant has not demonstrated prejudice. However, in the context of a due process violation, *the burden shifts to the government to disprove prejudice beyond a reasonable doubt.* "If a constitutional error is nonstructural,[8] then under our precedent, the Government *must*

---

[8] Leaving for another day the opportunity to analyze whether excessive post-trial delay is structural, requiring automatic relief, I assume for the purpose of this case it is not.

*prove* that the error was harmless beyond a reasonable doubt[.]" *Cueto*, 82 M.J. at 334 (citing *United States v. Tovarchavez*, 78 M.J. 458, 460 (C.A.A.F. 2019)) (emphasis added). Here, beyond the government's emphasis on what appellant has not shown, the record is silent on whether it has undertaken its own effort to assess prejudice. Arguing inferences based on what appellant has not shown is not the same as disproving prejudice beyond a reasonable doubt. In any event, the government has not carried its burden.

Even if the government had proven beyond a reasonable doubt that the due process violation was harmless, I would reach the same result—and grant the same relief—under our sentence appropriateness review authority in Article 66(d)(1). *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). We correctly did this in *Brown*. We found no due process violation; instead, applying Article 66(d)(1), we found appellant's sentence inappropriately severe, based on the government's similarly "flagrant" slow post-trial action, and granted relief. *Brown*, 81 M.J. at 511.

We are ill-positioned to accelerate what continues to be very slow post-trial processing across the Army's military justice practice. Nonetheless, I commend the majority's effort to better secure all soldiers' rights under the Constitution and UCMJ. Still, I believe relief is available and appropriate – setting aside the sentence. I recognize - and do not minimize - the nature and effects of appellant's misconduct; however, it is similarly important to recall that the government pursued and obtained—with some relative speed—a punitive discharge at trial, one of the strongest punishments under the law. Then, the case simply stopped moving for nearly 500 days, a delay broken only by the military judge's authentication (ten months pre-authentication, and five months post-authentication). In the meantime, we were unable to deliver on appellant's statutory right to judicial review of the findings of guilty for factual sufficiency. This responsibility sets the service courts of criminal appeals apart from almost every appellate criminal justice system in the country, representing an uncommon *convergence of importance and urgency*. And, of course, the possibility of a punitive discharge hangs over appellant's head like a sword of Damocles. As one of the many stewards of a fair and swift justice system, I cannot tolerate that result.

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court